## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

MICHAEL A. WEICHMANN,

     Plaintiff,

v.                            No. CIV-02-106 WJ/LCS

ELAINE CHAO, Secretary
United States Department of Labor,

     Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

     THIS MATTER comes before the Court pursuant to Defendant's Motion for Summary Judgment [Docket No. 12].  Having reviewed the submissions of the parties and the applicable law, I find the motion is well taken and will be granted for the reasons set forth herein.

**FACTUAL AND PROCEDURAL HISTORY**

     Plaintiff at all times relevant to this case was employed as an investigator by the Wage and Hour Division of the Employment Standards Administration, United States Department of Labor (Agency).[1]  Plaintiff began working in the Roswell Field Wage and Hour Office (Roswell Office) in April 1980.

     On September 6, 1999, Plaintiff filed a formal EEO complaint alleging that the Agency had discriminated against him on the basis of race, age, national origin, sex and disability because the Agency had denied Plaintiff's request to transfer from the Roswell Office to Las Cruces, New

_____

     [1]According to the most recent information in the record, Plaintiff is also currently employed with the Agency.

Mexico or El Paso, Texas.  On March 10, 2000, Plaintiff's case was transmitted to the EEO with

a request that an Administrative Judge be assigned to conduct a hearing.  On April 28, 2000, the

Chief Administrative Judge of the Dallas Office of the EEOC ordered the case referred for a

settlement conference with a facilitator.

On May 3, 2000, Plaintiff named his wife as his official representative in his EEO matter.

Plaintiff and the Agency then engaged in settlement discussions.  On July 24, 2000, after ongoing

negotiations, the Agency sent a proposed settlement agreement to Plaintiff.  On July 30, 2000,

Plaintiff and his wife both signed this agreement, it was signed by the Agency attorneys on August

21, 2000, and it was signed by a representative of the Agency on August 25, 2000.[2]  The first

agreement stated that Plaintiff's agreement was not based on harassment, threats, coercion, or

intimidation, and that he entered into it knowingly and voluntarily.  The document advised

Plaintiff to consult with an attorney with regard to the agreement and provided him an

opportunity to rescind the agreement within seven calendar days after the signing by the last party.

The essential terms of the first agreement were that the Agency granted Plaintiff a transfer

to the district office in Albuquerque, New Mexico (Albuquerque office) with a reporting date of

October 2, 2000, agreed to pay Plaintiff $10,000 for moving expenses, and provided Plaintiff with

seven days of administrative leave to locate new housing in Albuquerque and sell his house in

Roswell.  In exchange, Plaintiff agreed to dismiss his EEO complaint, agreed not to refile any

matters related to his September 6, 1999 EEO complaint, and agreed not to file or refile any

matters related to any non-selection for positions within the Wage and Hour Division up to and

_____

[2]For purposes of clarity, the Court will hereinafter refer to this agreement as the "first
agreement."

including the date of the agreement.  The agreement contained a standard nonretaliation clause in

which the Agency stated that, in accordance with law and agency practice, Agency officials would

not retaliate in any way against Plaintiff for his participation in the EEO process.

The first agreement also contained several terms with regard to enforcement of the

agreement and compliance with the agreement.  If Plaintiff believed the Agency had failed to

comply with the terms of the first agreement, Plaintiff was to notify the Agency EEO office in

writing within 30 days requesting either specific implementation of the agreement or requesting

reinstatement of the original EEO complaint for further processing.  The Agency was then

required to resolve the matter, and if Plaintiff was not satisfied with the Agency's resolution, the

Plaintiff was permitted to appeal to the EEOC for a determination of the Agency's compliance.

Conversely, if Plaintiff failed to comply with the terms of the first agreement, the Agency was

released from its obligations to pay the $10,000 and provide seven days of administrative leave,

and the Plaintiff waived his right to pursue any of the claims raised in his original EEO complaint

either before the EEOC or in federal court.

On or about May 1, 2000, after settlement negotiations began but before the first

settlement agreement was entered into, Plaintiff was given his performance appraisal for the

previous year.  His performance was rated as "effective" and he "met" the minimum requirements

on each of his three performance elements.  The union contract applicable to Plaintiff's

employment in May 2000 provided that an employee with an "effective" rating cannot receive a

performance award unless the employee's performance exceeds the standard in one or more

critical elements and demonstrates a significant contribution to the Agency.  For the period ending

April 30, 2000, the national performance awards plan for the Agency provided that a performance

award could not be given unless, at a minimum, an employee's performance was rated "effective" and the employee was found to "exceed" the minimum requirements on at least one performance element.  Thus, Plaintiff was not qualified to receive a performance award based on his May 2000 performance appraisal for the previous year.

On September 6, 2000, Plaintiff sent a letter to the Administrative Judge (AJ) in the Dallas EEOC office notifying the AJ that Plaintiff believed the Agency had breached the first agreement. Nothing within the first agreement provided for notification of the AJ of any perceived noncompliance.  On September 21, 2000, Plaintiff sent the same letter with an additional cover letter to the appropriate office, the Agency's Office of Civil Rights.  Plaintiff's letters stated that he had not received a performance award, he believed this was retaliatory, and retaliation was a breach of the first agreement.  Additionally, the letters requested that Plaintiff be permitted to pursue his initial EEO complaint.  Finally, the letters stated that Plaintiff would not report for duty at the Albuquerque Office pending a decision with regard to Plaintiff's request.  In spite of Plaintiff's belief that the First Agreement had been breached and his decision to not report to his assigned duty station in Albuquerque on the agreed reporting date, Plaintiff accepted the Agency's payment of $10,000 and took the administrative leave specified in the first agreement.

On September 27, 2000, the Agency's attorneys sent Plaintiff a letter advising Plaintiff of the Agency's position regarding Plaintiff's expressed intention to not report to the Albuquerque office.  The Agency's letter acknowledged receipt of Plaintiff's notification of the perceived breach and stated that the procedures set forth in the first agreement would be followed in that the Agency would investigate and respond to Plaintiff's claim of breach.  The letter then stated that the Agency expected Plaintiff to report for duty on October 2, 2000 as per the first agreement,

4

particularly in light of the fact that Plaintiff had accepted the $10,000 and taken the seven days administrative leave.  The letter stated that the Agency would consider Plaintiff to be AWOL if he did not report for duty as required and that the AWOL status could result in adverse employment action including removal.  Additionally, the letter stated that the Agency believed Plaintiff's failure to report for duty would be a breach of the first agreement, would result in Plaintiff being required to return the $10,000 and the seven days administrative leave, and would waive any rights Plaintiff might have to pursue the claims in his original EEO complaint.

On October 2, 2000, after discussions between Agency attorneys and Plaintiff with his wife as representative, the agency sent a second proposed settlement agreement to Plaintiff. Plaintiff and his wife both signed this agreement on October 6, 2000.  The Agency signed on both October 2, 2000, and October 16, 2000.[3]  When Plaintiff returned the signed second agreement to the agency, he enclosed a letter stating that he had received a letter from the Agency threatening to consider him AWOL if he did not report to duty in Albuquerque as required by the first agreement, and that Plaintiff was entering into the second agreement in order to prevent the Agency considering him AWOL pending the outcome of Plaintiff's claim for breach.

The essential terms of the second agreement permitted Plaintiff to remain in the Roswell office pending the resolution of his breach allegation, and allowed him thirty days to report to duty in Albuquerque if his allegations were dismissed.  In exchange, Plaintiff agreed to return the $10,000, convert the administrative leave he had used to annual leave, and to not file a claim relating to his retaliation allegation in the U.S. District Court.

---

[3]For purposes of clarity, the Court will refer to this as the "second agreement."

On December 27, 2000, the Agency's Civil Rights Center notified Plaintiff of its finding that the Agency had not breached the first agreement.  On July 17, 2001, the EEOC denied Plaintiff's appeal of the Civil Rights Center's decision.  On August 17, 2001, Plaintiff requested reconsideration of the July 17, 2001 EEOC decision.  On November 8, 2001, the EEOC denied Plaintiff's request for reconsideration.  On December 14, 2001, the Agency received the EEOC's denial of Plaintiff's request for reconsideration and offered Plaintiff a choice of reporting to duty in Albuquerque on January 14, 2002 or February 14, 2002.  Plaintiff requested the February 14, 2002 report date, reported timely, and accepted the $10,000 and seven days administrative leave specified in the first agreement.

On January 29, 2002, Plaintiff filed his Complaint in the instant case against Elaine L. Chao, Secretary of Labor.  In Counts I and II, the Complaint raises claims initially raised by Plaintiff in his initial September 6, 1999 formal EEO complaint.  In Counts III and IV, the Complaint also alleges a claim for breach of the first agreement based on retaliation and a claim for retaliation.  Among the factual allegations supporting Counts III and IV is the allegation raised by Plaintiff in his claim for breach addressed by the Agency in accordance with the first and second agreements, namely the Agency's alleged failure to provide Plaintiff with a performance award based on his May 2000 performance evaluation.  The other factual allegations with regard to the claims for breach and retaliation allege that the Agency has refused Plaintiff transfers and promotions and forced him to work for supervisors who are antagonistic, hostile, and adverse.

On July 1, 2002, a motion packet was filed that included Defendant's instant Motion for Summary Judgment.  Defendant argues she is entitled to judgment as a matter of law because the two settlement agreements preclude Plaintiff's claims insofar as they raise issues already

addressed in two agreements and because Plaintiff has not exhausted administrative remedies with

regard to any new allegations of retaliation.  In lieu of a response, Plaintiff filed a Rule 56(f)

Affidavit.  The affidavit averred that Plaintiff required information through discovery in order to

respond to the motion, and that he would require information with regard to (1) whether

Defendant retaliated against him when denying him a performance award based on the May 2000

performance evaluation; (2) evidence to support the claims raised in the initial September 1999

formal EEO complaint that was the subject of the first agreement; (3) alleged instances of

retaliation that have occurred subsequent to the events at issue in the two agreements; (4)

evidence to support a contention that Plaintiff was coerced into signing the second agreement;

and (5) with regard to the terms of the two agreements and the reasons the Agency

misrepresented those terms.

　　　　Defendant's Reply brief urged the Court to find that the Rule 56(f) Affidavit was not a

proper response to the motion for summary judgment in that it did not meet the requirements of

Rule 56(f), that the affidavit was insufficient to demonstrate that further discovery was necessary

in order to permit Plaintiff to fully respond to the motion, and to rule that Defendant was entitled

to summary judgment without further delay.  As indicated in a Memorandum Opinion and Order

filed December 5, 2002 [Docket No. 16], I found that the information sought by Plaintiff through

further discovery was not relevant to the legal arguments made in support of the motion for

summary judgment and would not create a disputed issue of material fact with regard to those

legal contentions.  However, I also found that it would not serve the interests of justice to rule on

the motion without giving Plaintiff an opportunity to file a proper response.  Therefore, in

accordance with Rule 56(f), I exercised my discretion and permitted Plaintiff an opportunity to file

a response within fourteen days of the December 5, 2002 filing of the Memorandum Opinion and Order.

Plaintiff elected to not file a response. On January 7, 2003, Defendant filed a Notice of Completion of Briefing [Docket No. 17] to alert the Court to the fact that Plaintiff had not filed a response in accordance with the Court's December 5, 2002 Memorandum Opinion and Order, had not served a response on Defendant, and had not requested an enlargement of time in which to file a response. In the Notice of Completion of Briefing, Defendant notes that, in accordance with D.N.M. LR.-Civ. 7.1(b), Plaintiff's failure to file a response constitutes Plaintiff's consent to grant Defendant's Motion for Summary Judgment. Thus, Defendant requests the Court grant Defendant's motion and enter judgment accordingly.

**LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleading depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Before the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its initial burden of demonstrating that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Id. By failing to file a response to a Rule 56 motion, a nonmoving party waives the right to file a response and

confesses all facts asserted and properly supported in the motion.  Murray v. City of Tahlequah, 312 F.3d 1196, 1199 (10th Cir. 2002).  However, summary judgment is not proper merely because a nonmoving party has failed to file a response.  Id. at 1200.  The burden on a nonmovant to respond arises only if the summary judgment motion is properly supported as required by Rule 56(c).  Id. (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 160-61 (1970)).

**DISCUSSION**

I.      CLAIMS RESOLVED BY THE FIRST SETTLEMENT AGREEMENT

Plaintiff may not raise in this case the claims that were initially raised in his September 6, 1999 formal EEO complaint.  Those claims were resolved by the first settlement agreement.  Even in conjunction with a claim for breach of a settlement agreement, a Plaintiff cannot bring a claim for the underlying discrimination that brought about the settlement agreement.  See, Cisneros v. ABC Rail Corp., 217 F.3d 1299, 1306 (10th Cir. 2000); Snider v. Circle K Corp., 923 F.2d 1404, 1408 (10th Cir. 1991); EEOC v. The Henry Beck Co., 729 F.2d301, 306 (4th Cir. 1984). Although the first settlement agreement states that Plaintiff may reinstate the September 6, 1999 EEO Complaint if the agreement is breached, the EEO complaint and claims therein would be subject to the exhaustion requirement of Title VII.  Therefore, Defendant is entitled to summary judgment on Counts I and II of Plaintiff's Complaint and these claims will be dismissed with prejudice.

II.     CLAIMS WAIVED BY THE SECOND SETTLEMENT AGREEMENT

Plaintiff's claims in Counts III and IV are based in part on allegations that were the subject of Plaintiff's September 2000 letters alleging that the Agency had breached the first settlement agreement.  In the second settlement agreement, Plaintiff waived his right to bring any claims

based on these allegations.  Thus, Plaintiff is barred from basing the claims in Counts III and IV

on these allegations unless the second settlement agreement may be voided.

Plaintiff does allege that he may void the second settlement agreement because it was the

result of duress.  Plaintiff's allegations of duress are based on the September 27, 2000 letter he

received from the Agency.  Plaintiff alleges that this letter coerced him into signing the second

agreement because it threatened to place him on AWOL status and threatened Plaintiff's

continued employment.

Issues involving the formation of a settlement agreement are resolved by applying state

contract law.  See United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000).  Under New

Mexico law, a contract is voidable if a party's assent to a contract is induced by an improper

threat that leaves the victim no reasonable alternative but to give assent.  Richards v. Allianz Life

Ins. Co. of North America, --- P.3d ---, 2003-NMCA-001 ¶ 33, 2002 WL 31929238 (N.M. App.

2002).  "The fundamental issue in duress cases is whether the statement which induced the

agreement is the type of offer to deal that the law should discourage as oppressive and thus

improper."  Id. at ¶ 30.  Generally, a lawful demand or threat to do that which the demanding

party has a right to do is not sufficient to support a claim of duress.  Lebeck v. Lebeck, 881 P.2d

727, 734 (N.M. App. 1994).

In the September 27, 2000 letter, the Agency notified Plaintiff of its right to take certain

actions in response to Plaintiff's threatened actions. As a matter of law, the letter does not

support Plaintiff's claim that he signed the second agreement under duress, and Plaintiff is bound

by his waiver of claims in the second agreement.  Therefore, Defendant is entitled to judgment on

Counts III and IV to the extent they raise claims waived in the second agreement and such claims are dismissed with prejudice.

III.     PLAINTIFF'S CLAIMS FOR RETALIATION AND BREACH OF AGREEMENT
         BASED ON NEW ALLEGATIONS NOT WAIVED BY THE SECOND AGREEMENT

Plaintiff seeks to litigate new allegations of retaliation in both his claims for retaliation and for a breach of the settlement agreement,  based on the language in the agreement which prohibits the Agency from retaliating against him.  Defendant contends that these claims should be dismissed for failure to exhaust administrative remedies, as required under Title VII.  Bolden v. PRC, Inc., 43 F.3d 545, 552 (10th Cir. 1994).  I find no basis on which to conclude that Plaintiff may avoid the need to exhaust these claims.  I am guided by available Tenth Circuit law which states that a plaintiff may bring an underlying discrimination claim as a breach of a settlement agreement, Snider v. Circle K Corp., 923 F.2d 1404 (10th Cir. 1991) and that exhaustion is not required for breach of agreement claims, Cisneros v. ABC Rail Corp. et al., 217 F.3d 1299 (2000).  Plaintiff's theory would, it seems to the Court, impermissibly broaden the holdings of these cases beyond those cases' particular factual scenarios.

The present factual situation is sufficiently distinct and inapposite to preclude an application of the holdings in either Snider or Cisneros.  In alleging breach of agreement, the plaintiff in Cisneros was attempting to enforce specific terms of the settlement agreement which required some kind of affirmative conduct by the employer -- viz., the promise that employer would restore a particular service date for purposes of calculating vacation and pension benefits. Plaintiff here is attempting to enforce a generic anti-discrimination mandate that imposes on the employer a mandate *not* to do something, a mandate that looks like, sounds like, and therefore

should be treated like a claim of discriminatory conduct requiring exhaustion before it can be brought into federal court. At the same time, Plaintiff is not precluded from presenting his retaliation claims as a breach of the agreement.  However, the plaintiff in <u>Snider</u> had already separately exhausted the discrimination claim before alleging it as a breach of the agreement. Thus, <u>Snider</u> cannot stand for the proposition that Plaintiff need not exhaust the retaliation claim prior to presenting it as a breach of the agreement, since the <u>Snider</u> court did not address the issue of whether the plaintiff in that case would have been allowed to circumvent that requirement.

Any other reading of the case law would essentially create a permanent "free pass" to any would-be plaintiff who believes that conditions existing subsequent to a settlement agreement constitute discriminatory conduct.  Cmp.,<u>EEOC v. Henry Beck Co.</u>, 729 F.2d 301, 304 (4th Cir. 1984)(enforcement of pre-determination settlement agreements in federal courts would allow EEOC to "leapfrog" jurisdictional requirements when Title VII violations were charged); <u>see</u> <u>also</u>, <u>Swearingen v. Caldera, Ssec'y, Dep't. of the Army</u>, EEOC Decision, 1999 WL 334577 (May 12, 1999) (allegation of discriminatory acts subsequent to settlement agreement should be processed as a "separate complaint . . . rather than as a breach allegation." ); <u>Fennell v. Rubin, Secretary, Dept. of the Treasury</u>, EEOC Decision,1997 WL 405387 (July 17, 1997 (allegation than an agency has violated a settlement agreement's "no reprisal" clause is to be processed as a "separate complaint rather than a breach of the settlement agreement."[4]  Accordingly, to the extent Plaintiff's retaliation claim and breach of agreement claim in Counts III and IV are based on new

---

[4] The EEOC lacks authority to promulgate rules and regulations under Title VII, and its interpretation of Title VII is therefore entitled to deference only in proportion to its persuasiveness. <u>Gen. Elec. Co. v. Gilbert</u>, 429 U.S. 125, 141- 42 (1976).  However, EEOC interpretations are entitled to consideration as persuasive authority. <u>United States v. Mead Corp</u>., 533 U.S. 218, 234-35 (2001).

allegations not waived by the second settlement agreement, they are dismissed without prejudice for Plaintiff's failure to exhaust his administrative remedies.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Docket No. 12] is hereby GRANTED in that Counts I and II are DISMISSED WITH PREJUDICE, Counts III and IV are DISMISSED WITH PREJUDICE to the extent they are based on claims waived by the second agreement, and Counts III and IV are DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies to the extent they are based on new allegations.

_____
UNITED STATES DISTRICT JUDGE